## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. ELH-20-0193** |
| **BRYANT WILLIAMS** | |
| **Defendant.** | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
### TO SUPPRESS EVIDENCE (WARRANTLESS SEARCH)
### AND MOTION TO SUPPRESS EVIDENCE (STATEMENTS)

The United States of America, through its attorneys, Robert K. Hur, United States Attorney

for the District of Maryland, Lindsay DeFrancesco, Special Assistant United States Attorney, and

Patricia McLane, Assistant United States Attorney, for said District, respectfully submits this

Response in Opposition to Defendant Bryant Williams's ("Defendant") Motion to Suppress

Evidence (Warrantless Search) ("MTS Firearm") and Motion to Suppress Evidence (Statements)

("MTS Statements").  ECF Nos. 20-21.  The Government respectfully requests that the Motions

be denied.

### INTRODUCTION

On March 18, 2020, Detective ("Det.") Bezzek of the Baltimore Police Department

("BPD") performed a random tag check on the car the Defendant was driving while patrolling the

area of 1800 Hollins Street, Baltimore, Maryland.  The tag check revealed that the car's registration

was suspended, so Det. Bezzek initiated a traffic stop.  Once the car was stopped, Det. Bezzek

approached the driver's side window, asked the Defendant for his license, and explained why he

was being stopped.  The Defendant told Det. Bezzek that he did not have a valid license, but

provided his Maryland identification card.  Det. Bezzek subsequently searched for the Defendant's

information in the National Crime Information Center ("NCIC") database while another officer on

scene checked to see if the Defendant had any warrants.  These queries revealed that the Defendant had multiple traffic violations, along with two active warrants for his arrest.  As such, the officers arrested the Defendant on the spot.

Pursuant to BPD policy (given the suspended registration and the Defendant's arrest), the car had to be inventoried and then towed to the City Yard.  Thus, prior to the arrival of the tow truck, Det. Bezzek conducted an inventory search of the car, during which he discovered a firearm in the center console.  During a post-*Miranda* interview at the police station, which was video and audio recorded, the Defendant twice admitted to knowingly possessing the gun.  On July 15, 2020, the Defendant was indicted for a violation of 18 U.S.C. § 922(g).

In his Motions, the Defendant claims that Det. Bezzek did not have reasonable suspicion or probable cause to stop and arrest him; that the inventory search was improper; and that his admissions were illegally obtained, fruit of the poisonous tree.  Each argument should be rejected.  *First*, the traffic stop was proper because the Defendant was driving with a suspended registration in violation of Maryland law, which gave Det. Bezzek reasonable suspicion to initiate the stop.  *Second*, the Defendant's subsequent arrest was lawful because the Defendant was driving without a license and had two active warrants for his arrest.

*Third*, the inventory search was appropriate because it was conducted in accordance with BPD's policy on towing procedures ("Towing Policy") and applicable law.  *Fourth*, even if the inventory search *at the scene* was not proper, which the Government maintains it was, the firearm is still admissible pursuant to the inevitable discovery doctrine because the firearm would have inevitably been discovered during a later inventory search of the car, pursuant to the Towing Policy.  *Fifth*, the Defendant's admissions are admissible because they were provided voluntarily after he had received his *Miranda* warnings and are not otherwise fruit of the poisonous tree.  The

Defendant's Motions must therefore be denied.

## FACTUAL BACKGROUND

On March 18, 2020, at about 1:00 p.m., Det. Bezzek performed a random tag check on a Hyundai—license plate number 6EA0903—while patrolling the 1800 block of Hollins Street in Baltimore, Maryland.  *See* **Exhibit A** (Det. Bezzek's Body Worn Camera).[1]  The tag check revealed that the car's registration had been suspended and the Maryland Motor Vehicle Administration ("MVA") had issued a pick-up order for the car, so Det. Bezzek initiated a traffic stop.  Once the car was stopped, Det. Bezzek approached the driver's side window and asked the driver and sole occupant of the car, later identified as the Defendant, for his license.  He also asked the Defendant whether he owned the car.  The Defendant told Det. Bezzek that he did not have a license and that he was not the owner of the car.  He said his cousin, A.M., owned the car.  *Id.* at 0:00 – 1:55.

Det. Bezzek told the Defendant that he had been pulled over because the tags on the car were suspended due to an insurance violation.  The Defendant told Det. Bezzek that he thought he had insurance, and said he would try and get proof of the insurance.[2]  *Id.* at 2:30 – 2:55**.**  In the interim, Det. Bezzek walked back to his car and attempted to search for the Defendant's information in the NCIC database.  *Id.* at 3:00 – 4:30.  When Det. Bezzek could not find the Defendant's information in the database, he asked the Defendant for his Maryland identification card so he could try and search the NCIC database using the Defendant's soundex number.  At that time, Det. Bezzek also told the Defendant that he could have someone with a valid license come

---

[1]     The facts outlined in the Factual Background are derived from Det. Bezzek's body worn camera, which will be provided to the Court.

[2]     Ultimately, the Defendant never provided proof of insurance.

and get the car, but then quickly corrected himself and explained that no one could drive the car under Maryland law because the tags were suspended.  As such, Det. Bezzek told the Defendant to temporarily park the car while he completed the traffic stop, and then they would decide what to do with the car after the traffic stop was finished.  Det. Bezzek did not specify what would happen to the car after the traffic stop was complete.  *Id.* at 4:35 – 5:36.  Det. Bezzek and another officer on the scene subsequently searched for the Defendant's information again using his Maryland identification card, at which time they discovered a number of traffic violations and two active warrants for the Defendant's arrest.  *See id.* at 5:55 – 14:00; *see also* **Exhibit B** (Defendant's Traffic Citations); **Exhibit C** (Defendant's Arrest Warrants).  One was for driving without a license, and one was for a domestic violence-related offense.  *Id.*   The Defendant was therefore removed from the car and arrested.[3]

Pursuant to the Towing Policy and Maryland law, the car the Defendant was driving had to be subsequently inventoried and then towed.  This is because the Defendant had been arrested; because the owner of the vehicle was not present and did not give officers permission to release the car to anyone else; and because the vehicle could not be driven given the suspended registration.  Specifically, the Towing Policy states:

> A vehicle driven by an arrested driver may be released by the arresting officer to:
> The owner/co-owner of the vehicle; or A licensed driver with the consent of the
> owner/co-owner. . . .  If the arresting officer does not release the vehicle, tow the
> vehicle to the City Yard. . . .

**Exhibit D**, at 4-5 (BPD Towing Procedures Policy 902), https://www.baltimorepolice.org/902-towing-procedures.  In addition, Md. Transp. § 13-401(h) prohibits driving a car with a suspended

---

[3]     The Defendant could have also been arrested for driving without a license pursuant to Md. Transp. §16-101(a1).  The penalty for driving without a license (for a first offense) is up to 60 days in prison; the penalty for driving without a license (for a second offense) is up to one year in prison.  Md. Transp. §16-101(a1)(C)

registration.  *Id.* ("If the registration of a vehicle is suspended, a person may not drive the vehicle on a highway in this State").

Thus, Det. Bezzek returned to the car and began the inventory search, at which time he discovered a gun in the center console of the car.  *See* Exhibit A, at 26:40 – 27:25.  While Det. Bezzek secured the firearm, other officers completed the inventory search and searched the remainder of the vehicle.  No other contraband was found.  A Form 14/008 Incident Report was also completed for the towed vehicle.  **Exhibit E** (Form 14/008 Towed Vehicle Incident Report).  During a post-*Miranda* interview at the police station, the Defendant told officers (twice) that he had the gun for protection.  **Exhibit F** (Explanation and Waiver of Rights); **Exhibit G** (Interview Video), at 2:14:50; 2:22:55.[4]

## ARGUMENT

With respect to motions to suppress, the "burden of proof is on the party who seeks to suppress evidence."  *United States v. Bello-Murillo*, 62 F. Supp. 3d 488, 491–92 (E.D.V.A. 2014) (internal citation omitted).  "Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence."  *Id.* (internal citation omitted).

## I.   GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (WARRANTLESS SEARCH)

The Defendant challenges every link in the chain of events that led to the discovery of the firearm in his possession.  First, he claims the initial traffic stop was illegal.  *See* MTS Firearm, at 6.  Second, he asserts his subsequent arrest was unlawful.  *Id.*  Third, he contends the inventory search Det. Bezzek performed was not an inventory search at all, but an improper, warrantless

---

[4]      The Government will provide a copy of the interview for the Court's review.

search.  *Id.* at 6-11.  The Government respectfully submits that each of these arguments should be rejected.  The traffic stop was lawful because Det. Bezzek had reasonable suspicion that a traffic violation had occurred.  The arrest was lawful because the Defendant had two active warrants for his arrest and was driving without a license.  And the inventory search was lawful because it was properly conducted pursuant to Maryland law and the Towing Policy (and, even if it wasn't, which the Government maintains it was, the gun would still be admissible under the inevitable discovery doctrine).

### A.   The Initial Traffic Stop and Subsequent Arrest of the Defendant Were Lawful

The Defendant contends—albeit, very cursorily and without further discussion—that "officers did not have reasonable suspicion or probable cause to stop or arrest [the Defendant] in the first place."  MTS Firearm, at 6.  This argument has no merit.

### 1.   Det. Bezzek Had Reasonable Suspicion to Initiate a Traffic Stop Because the Car's Registration Was Suspended

Courts "analyze the propriety of a traffic stop using" the principles outlined in *Terry v. Ohio*, 392 U.S. 1 (1968).  *United States v. Green*, 740 F.3d 275, 279 (4th Cir. 2014) (internal citation omitted), *cert. denied*, 574 U.S. 885 (2014).  A police officer may conduct a *Terry* stop "when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  The level of suspicion required for a *Terry* stop is "less demanding than that for probable cause" and "considerably less than proof of wrongdoing by a preponderance of the evidence."  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  In evaluating the validity of a *Terry* stop, courts consider "the totality of the circumstances."  *Id.* at 8.  "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop."  *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)),

*cert. denied*, 555 U.S. 1118 (2009).

Det. Bezzek initiated a traffic stop after a random tag check revealed that the MVA had issued a pick-up order for the car the Defendant was driving because its registration had been suspended.  The Defendant was therefore in violation of Md. Transp. § 13-401(h) (Driving Vehicle on Highway with Suspended Registration), among other Maryland Transportation Authority provisions.  *See* Exhibit B.  As such, Det. Bezzek had reasonable suspicion to conduct a traffic stop.  *See, e.g*., *Branch*, 537 F.3d at 335.

> ## 2. Officers Had Probable Cause to Arrest the Defendant Because He Had Two Active Warrants for His Arrest and was Driving Without a License

Prior to issuing an arrest warrant, a court must find that there is probable cause that the subject of the warrant committed or is committing a crime.  *United States v. Womack*, 285 F. App'x 87, 88 (4th Cir. 2008) (unpublished opinion) (citing *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994)).  A judicial officer's determination that there is probable cause to issue a warrant is a "practical, common-sense decision . . . ."  *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).  "Because probable cause is evaluated through a totality-of-the-circumstances analysis rooted in common sense," a reviewing court should give "great deference" to an issuing judicial officer's decision to issue a warrant based on the facts before her.  *Id*.  An active arrest warrant therefore gives a police officer probable cause to arrest the subject of the warrant.  *See, e.g.*, *Womack*, 285 F. App'x at 88.  Even where an arrest warrant is found to be lacking, including when there is a clerical error in the warrant, a court should not suppress the evidence if executing officers relied on the warrant in good faith.  *See United States v. Leon*, 468 U.S. 987 (1984) (explaining good faith exception); *Arizona v. Evans*, 514 U.S. 1, 15–16 (1995) (holding that the good faith exception applies to arrest warrants and in situations

where the arrest warrant is subject to a clerical error).

After Det. Bezzek pulled over the car the Defendant was driving, he and another officer on the scene checked to see if the Defendant had any warrants.  This query revealed that the Defendant had two active warrants for his arrest.  *See United States v. Rusher*, 966 F.2d 868, 876–77 (4th Cir. 1992) (explaining that the traditional incidents of a routine traffic stop include requesting a driver's license and vehicle registration, running a computer check, and issuing a citation) (internal citation omitted), *cert. denied*, 506 U.S. 926 (1992); *see also* Exhibit C.  In addition, the Defendant was driving without a license, in violation of Md. Transp. §16-101(a1).  The penalty for driving without a license (for a first offense) is up to 60 days in prison; the penalty for driving without a license (for a second offense) is up to one year in prison.  Md. Transp. §16-101(a1)(C).  As such, officers lawfully arrested the Defendant.  *See, e.g.*, *Womack*, 285 F. App'x at 88.

## B.    BPD Officers Properly Performed an Inventory Search Pursuant to BPD's Towing Policy[5]

Vehicles may be searched without a warrant under certain exceptions to the Fourth Amendment's warrant requirement.  One such exception that has been recognized for decades is an inventory search.  *See, e.g.*, *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976) ("The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable.").  The Fourth Circuit has held that an inventory search is lawful where (1) "the circumstances reasonably justified seizure or impoundment, and (2) law enforcement conducts the inventory search

---

[5]    The Defendant argues, as a threshold matter, that "the search of the vehicle was unlawful because Det. Bezzek did not have probable cause to believe it contained evidence of a crime" and because it was not otherwise "supported as a search incident to a lawful arrest."  MTS Firearm, at 6.  The Government does not contend that the search was lawful because Det. Bezzek had probable cause to believe there was evidence of a crime in the car or that it was a search incident to arrest.

according to routine and standard procedures designed to secure the vehicle or its contents." *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017).  Although a court considering the propriety of an inventory search must analyze the facts of the case through the lens of these two prongs, the Supreme Court has repeatedly emphasized that the ultimate question for the Court's consideration is whether the inventory search was "*reasonable* under the Fourth Amendment," not "whether the search was *authorized* by state law."  *Opperman*, 428 U.S. at 372 (emphasis in original) (quoting *Cooper v. California*, 386 U.S. 58, 61 (1967)); *see also Colorado v. Bertine*, 479 U.S. 367, 374 (1987) ("[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment.").

In assessing whether a search is reasonable, a Court must weigh the intrusion into one's privacy interest against the "legitimate governmental interest" the search was designed to protect. *See, e.g.*, *Illinois v. Lafayette*, 462 U.S. 640, 645–47 (1983) (internal quotation omitted).  On balance, an individual who does not own a vehicle has a decreased privacy interest in that vehicle. *United States v. Carter*, 300 F.3d 415, 421 (4th Cir. 2002), *cert. denied*, 537 U.S. 1187 (2003). And the Supreme Court has recognized three legitimate governmental interests in the context of inventory searches:  "the protection of the owner's property while it remains in police custody; . . . the protection of the police against claims or disputes over lost or stolen property; . . . and the protection of the police from potential danger."  *See, e.g.*, *Opperman*, 428 U.S. at 369 (internal citations and quotations omitted).

Here, contrary to the Defendant's assertions, the circumstances reasonably justified seizure or impoundment of the car the Defendant was driving, and Det. Bezzek conducted the inventory search according to routine policy in furtherance of the traditional government interests.

### 1.    The Circumstances Reasonably Justified Seizure or Impoundment of the Car the Defendant Was Driving

Impoundment is a reasonable course of action under many circumstances.  Impoundment is reasonable when the driver of a vehicle is arrested, when the driver of a vehicle does not possess a valid license, and/or when a traffic violation renders a car unfit to drive on a public highway. *See United States v. Brown*, 787 F.2d 929, 930–32 (4th Cir. 1986) (upholding inventory search after driver was arrested), *cert. denied*, 479 U.S. 837 (1986); *see also Thompson v. State*, 192 Md. App. 653, 670–71, 995 A.2d 1030, 1040 (2010) (applying federal law and noting that the officer's "decision to have the vehicle towed," where the vehicle did not appear to have a proper registration and the driver could not produce a valid license, was "consistent with a long line of Maryland cases that give police departments authority to take automobiles in custody, in furtherance of their community caretaking functions.") (internal quotation omitted); *United States v. Paynter*, 234 Md. App. 252, 275–76, 170 A.3d 891, 903–05 (2017) (applying federal law and holding that officers lawfully and reasonably impounded and inventoried a vehicle where the sole occupant had a suspended license, the vehicle's registration was suspended, and a pick-up order had been issued for the car).

In the case at bar, impoundment was unquestionably reasonable.  The Defendant's license was suspended, meaning he could not drive the car under Maryland law.  *See* Exhibit B.  The Defendant was also arrested, meaning he could not take the car under the Towing Policy.  *See* Exhibit D.  What's more, the vehicle's registration had been suspended and a pick-up order had been issued, meaning no one could drive the car on a highway.  *See* Md. Transp. § 13-401(h) ("[A] person may not drive the vehicle on a highway" if that vehicle's registration is suspended); Md. Transp. § 13-411(d) ("Except as otherwise expressly permitted by the Maryland Vehicle Law, as to any vehicle required to be registered under this title, a person may not drive the vehicle on any

highway in this State, unless there is attached to the vehicle and displayed on it, as required in this title:  A registration plate or plates issued for the vehicle by the Administration for the current registration period. . . . ").[6]  Multiple Maryland courts, while relying on federal law, have upheld inventory searches and, more specifically, the reasonableness of impoundment under analogous circumstances.  *See Thompson*, 192 Md. App. at 670–71; *Paynter*, 234 Md. App. at 275–76.  And the Government anticipates that Det. Bezzek will testify that he and other officers routinely impound cars under these circumstances.

Nevertheless, the Defendant contends the car was unreasonably impounded because Det. Bezzek could have and should have used an alternative to impounding—he should have allowed the car to remain parked on the street, or he should have released the car to the Defendant's sister. MTS Firearm, at 9-10.  The Defendant specifically asserts Det. Bezzek should have used these alternatives because he "promised" he would during the course of the traffic stop.  *Id*.  While the Government disagrees with the Defendant's jejune logic and mischaracterization of he and Det. Bezzek's conversation (Det. Bezzek never "promised" anything), their discussion of potential alternatives is irrelevant and has no bearing on the propriety of impoundment.

That is, the Defendant's argument is a classic example of the proverbial "cart before the horse."  As a threshold matter, it is well-established that an officer is not required to consider or use alternatives to impoundment when impoundment is reasonable under the circumstances, and

---

[6]     The Defendant claims that Md. Transp. § 13-708(a) only permits an officer to remove a vehicle's license plate when a pick-up order is issued, not the car itself.  That is not, however, what the provision says.  Section 13-708(a) provides: "If the [MVA] cancels, suspends, or revokes the certificate of title or the registration of a vehicle, the owner of the evidences of the title or the evidences of the registration, including the registration card and registration plates, immediately shall return them to the Administration."  By its plain language, the provision does not prohibit an officer from also towing the vehicle.  In fact, it does not address whether towing is appropriate at all.

the mere presence of alternatives to impoundment does not render the impoundment unreasonable.[7]  *See Lafayette*, 462 U.S. at 647–48 (existence of less intrusive means of conducting search or seizure does not render search or seizure unreasonable so long as circumstances indicate that officers' actions were reasonable); *Bertine*, 479 U.S. at 373–74 ("[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure."); *United States v. Battle*, 370 F. App'x 426, 429 –30 (4th Cir. 2010) (unpublished opinion) (citing *Bertine* and holding that officer was not required to let defendant remove valuables from the car before he performed inventory search), *cert. denied*, 562 U.S. 936 (2010); *Brown*, 787 F.2d at 931–33 ("The police could have [released the car to the defendant's girlfriend].  That they did not, however, does not render their impoundment of Brown's car unreasonable.") (citing *Lafayette*, 462 U.S. at 647));  *United States v. Williams*, 777 F.3d 1013, 1016 (8th Cir. 2015) ("It was lawful for [the officer] to decide to have the car towed rather than ask Williams to contact someone to retrieve it."); *United States v. Arrocha*, 713 F.3d 1159, 1164 (8th Cir. 2013) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory.") (internal quotation omitted).

The single case the Defendant cites to the contrary, *United States v. Brown*, actually supports the Government's position.  787 F.2d 929 (4th Cir. 1986).  The Defendant cites *Brown* for the proposition that "impounding a vehicle [is] appropriate only when 'there [is] no known individual immediately available to take custody of the car, or because the car could have

---

[7]     The Towing Policy is consistent with prior precedent in that it states a car "*may* be released by the arresting officer," not shall be released.  Exhibit D.

constituted a nuisance in the area in which it was parked." MTS Firearm, at 9. But that is not what *Brown* holds. In *Brown*, officers pulled over the defendant's car after observing the car swerve in a manner that suggested the driver was intoxicated. *Id.* at 930–31. The officers subsequently confirmed the defendant was inebriated, arrested him for a DUI, and informed him that his car was going to be impounded. *Id.* At the defendant's request, the officers drove the car to the police station for processing, rather than calling for a tow. *Id.* While driving the car, the officers performed an inventory search and discovered a firearm. *Id.* The defendant moved to suppress the gun, claiming, in part, that the officers' impoundment of the car was unlawful because the officers could have left the car parked where it was, or could have released the car to the defendant's girlfriend. *Id.* at 932. The Court rejected this argument and explained that even if there were viable alternatives to impoundment, the officers were not required to use those alternatives. *Id.* at 932–33. And the mere fact that the officers did not use those alternatives did not render the impoundment unreasonable. *Id*. at 932 ("The police could have [released the car to the defendant's girlfriend]. That they did not, however, does not render their impoundment of Brown's car unreasonable.") (citing *Lafayette*, 462 U.S. at 647).

Thus, the Court's analysis need not go further. As explained above, the impoundment of the Defendant's car was reasonable, so the mere presence or discussion or alternatives is irrelevant. However, even if this Court were inclined to consider the alternatives presented by the Defendant, it would find they were not suitable, and the officers' decision not to use such alternatives was therefore reasonable. First, the Government expects Det. Bezzek will testify that officers were not allowed to release the car to the Defendant's sister. This is because the Defendant was not the owner of the car (meaning he could not lawfully release the car to anyone under the Towing Policy), and the registration was suspended (meaning no one could drive the car). *See* Exhibit D;

Exhibit B.   Second, the Government anticipates Det. Bezzek will explain that leaving the car parked was an unsuitable option because the car would have remained on a busy street impeding traffic until someone fixed the registration issue and could therefore drive it, which could take a very long time.   And if the car remained parked for more than 48 hours, it likely could have been towed as an abandoned vehicle under the Towing Policy.   Exhibit D.

The officers' decision to impound the car was therefore reasonable under the circumstances.

### 2.   Det. Bezzek Conducted the Inventory Search According to Policy to Secure the Vehicle and Its Contents

The Towing Policy dictates that "a vehicle driven by an arrested driver" must be towed to the City Yard, unless the vehicle is otherwise released by its owner to a suitable driver.   *See* Exhibit D, at 4-5.   Any vehicle that is going to be towed to the City Yard must be inventoried for "all personal and detachable property of value not removed from the vehicle by the owner or operator." *Id*. at 6.   And officers must complete a Towed Vehicle Incident Report, Form 008.   *Id.* at 2.   The scope of an inventory search includes "all of a vehicle's contents," such as unlocked portions of a vehicle's interior, like a glove box or center console.   *See Bullette*, 854 F.3d at 266– 67.   What's more, "[a]n on-site inventory search, as opposed to one that is conducted at an impound lot, is permissible so long as the officer had the initial authority to impound the vehicle."   *United States v. Chambers*, 59 F. App'x 509, 510 (4th Cir. 2003) (unpublished opinion).

Here, after the Defendant was arrested, officers proceeded to inventory the vehicle. Although the search began with the front passenger area and the center console, where the firearm was found, the body worn camera reflects that officers continued to search the entire vehicle, consistent with the Towing Policy.   *See* Exhibit A; Exhibit D.   A Form 008 was also completed. *See* Exhibit E.   The Defendant does not appear, by way of his Motions, to contest the manner in

which the inventory was conducted (*i.e.*, whether the search was conducted according to policy). In fact, he does not even cite the Towing Policy.  Rather, the Defendant claims that the search was unlawful because its purpose was to fish for evidence or a crime, not to secure the vehicle and its contents.[8]

The Defendant makes this argument, however, without noting that federal courts around the country have held that an inventory search is lawful even if officers believe they may find evidence of a crime while performing the search, as long as the search is also performed in furtherance of the typical community caretaking functions discussed *supra* and is otherwise reasonable.  The Second Circuit, in *United States v. Lopez*, discussed this concept at length:

> The Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search. When officers, following standardized inventory procedures, seize, impound, and search a car in circumstances that suggest a probability of discovering criminal evidence, the officers will inevitably be motivated in part by criminal investigative objectives. Such motivation, however, cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes. . . . Under the Supreme Court's precedents, if a search of an impounded car for inventory purposes is conducted under standardized procedures, that search falls under the inventory exception to the warrant requirement of the Fourth Amendment, notwithstanding a police expectation that the search will reveal criminal evidence. . . .  If good faith is a prerequisite of an inventory search, the expectation and motivation to find criminal evidence do not constitute bad faith.

547 F.3d 364, 372 (2d Cir. 2008) (first citing *Bertine*, 479 U.S. at 372–74; then citing *Opperman*,

---

[8]    In support of this argument, the Defendant asserts Det. Bezzek's actions demonstrate that he never intended to tow the car.  Specifically, Det. Bezzek (1) told the Defendant that he was allowed to search his car because "he had a warrant," not because it was going to be towed, and (2) did not call for a tow truck until after he found the firearm.  First, the Government expects Det. Bezzek will testify that he meant what he said.  A car must be towed if the driver is arrested, and the Defendant was arrested pursuant to a warrant.  Thus, the warrant gave Det. Bezzek the right to tow the car and, in turn, inventory its contents.  Second, the Government anticipates Det. Bezzek will testify that he usually does not request a tow until a traffic stop is nearly complete because the tow truck usually arrives very quickly once it is requested, and he does not want the tow waiting at the scene for an extended period of time.

428 U.S. at 369) (holding inventory search was lawful, even though the officers may have suspected criminal activity))), *cert. denied*, 556 U.S. 1114 (2009); *United States v. Mundy*, 621 F.3d 283, 293–94 (3d Cir. 2010) (holding inventory search was lawful even though officers suspected they would find evidence of criminal activity in the car because they saw and smelled suspected drugs during the initial traffic stop, given that the inventory was otherwise in accordance with policy and reasonable), *cert. denied*, 562 U.S. 1242 (2011); *see also Paynter*, 234 Md. App. at 275–76 (applying federal law and holding inventory search was lawful even though officers suspected he was armed given that the search was otherwise in accordance with policy and reasonable: "Even when the police realistically possess some expectation of finding evidence of crime, that does not represent some virulent taint that ipso facto contaminates the parallel inventory purpose of the search. . . .  the national caselaw is clear that the two purposes may comfortably co-exist. They are not mutually antagonistic. . . .").

The two cases the Defendant cites in support of his argument are inapposite.  In *Florida v. Wells*, the Supreme Court held that an inventory search was unlawful because there was no applicable policy regarding inventory searches (as there is in the case at bar), rendering the search unreasonable.  495 U.S. 1, 4-5 (1990).  The Court's decision had nothing to do with the officers' motivations, and the Defendant's quote to *Wells* is mere dicta.   In *United States v. Seay*, the defendant claimed the inventory search was unlawful because it was performed in a discretionary manner.  944 F.3d 220 (4th Cir. 2019).  The Fourth Circuit rejected this argument and upheld the search, noting "police discretion is not entirely forbidden . . . [and] . . . discretion based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment."  *Id.* at 223–24.  Again, the Defendant's quote to *Seay* is mere dicta, and, in fact, an internal citation to *Wells*.

Thus, the issue for the Court to consider is not whether Det. Bezzek believed he would find evidence of a crime in the car during the course of the inventory search.  It is whether Det. Bezzek performed the inventory search in furtherance of a legitimate government interest, such as "the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; [and/or] the protection of the police from potential danger."  *Opperman*, 428 U.S. at 369.  For if the latter is true, then the answer to the former is not relevant.  And the Government indeed anticipates that Det. Bezzek will testify that he conducted the search for purposes of securing the vehicle and the Defendant's property, and to protect the police from potential claims related to stolen or lost property.    As such, the inventory search was lawful.

C.      **Even If This Court Determines that BPD's Search Was Unlawful, the Firearm is still Admissible Pursuant to the Inevitable Discovery Doctrine**

Under the inevitable discovery doctrine, "the government [may] use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have 'ultimately or inevitably' discovered the evidence by 'lawful means.'"  *Bullette*, 854 F.3d at 265 (internal citation omitted).

The Fourth Circuit and a number of courts in the District of Maryland have recognized that an inventory search is often "inevitable" within the meaning of the inevitable discovery doctrine.  *Id.* (affirming the District Court's denial of defendant's motion to suppress, reasoning that the evidence at issue recovered from Defendant's vehicle would have been inevitably discovered during an inventory search); *see e.g., United States v. George*, 971 F.2d 1113, 1120–21 (4th Cir. 1992) (acknowledging that the inevitable discovery doctrine may apply when officers would have recovered the evidence at issue in the course of a properly performed inventory search); *Chambers*, 59 F. App'x at 510–11 (holding that the District Court properly permitted introduction of evidence

recovered from a vehicle because it would have been inevitably discovered during the course of an inventory search), *cert. denied*, 538 U.S. 1051 (2003); *United States v. McCullum*, 469 F. App'x 194, 197 (4th Cir. 2012) (unpublished opinion) ("A routine inventory search policy may serve as the basis for the admission of evidence under the inevitable discovery doctrine."); *United States v. Hariston*, 409 F. App'x 668 (4th Cir. 2011) (unpublished opinion) (holding that the evidence at issue obtained from the subject vehicle was admissible under the inevitable discovery doctrine because the officers would have inevitably conducted an inventory search and found the items), *cert. denied*, 563 U.S.1028 (2011).

Here, if the Court finds that the search of the car at the scene of the Defendant's arrest was not a proper inventory search, contrary to the Government's position, the firearm is still admissible because it would have inevitably been discovered during the course of a later, lawful inventory search.  As the Towing Policy makes clear, the car had to be towed because the Defendant was arrested and the owner was not present to release the car:

> A vehicle driven by an arrested driver may be released by the arresting officer to: The owner/co-owner of the vehicle; or A licensed driver with the consent of the owner/co-owner . . .  If the arresting officer does not release the vehicle, tow the vehicle to the City Yard . . .

Exhibit D, at 4-5.  There is no discretion in this regard.  What's more, the car had to be inventoried because it was being towed:  "When a vehicle is being towed to the City Yard, inventory all personal and detachable property of value not removed from the vehicle by the owner or operator." *Id.* at 6.  Again, the Towing Policy is non-discretionary in this regard.  And because a proper inventory search requires searching "all of the vehicles contents," including unlocked portions of a vehicle's interior, the center console would have inevitably been opened and searched.  *See Bullette*, 854 F.3d at 266–67.  Therefore, even if this Court determines that the initial search on scene was unlawful, the firearm is still admissible under the inevitable discovery doctrine.

In sum, Det. Bezzek's traffic stop was lawful because he had reasonable suspicion that a traffic violation had occurred.  The Defendant's arrest was lawful because the Defendant had two active warrants for his arrest.  And the inventory search was lawful because it was properly conducted pursuant to Maryland law and the Towing Policy—and even if it wasn't, the gun would still be admissible under the inevitable discovery doctrine.

## II.   GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (STATEMENTS)

The Defendant also moves to suppress "all statements, admissions and confessions allegedly given by the Defendant . . . ." MTS Statements, at 1.  He contends—albeit, very cursorily and without any factual support—that any such admissions were unlawfully obtained and/or are fruit of the poisonous tree.  *Id.*  The Court should reject these arguments.  The Defendant twice admitted to possessing the gun Det. Bezzek recovered from his car during a post-arrest interview conducted back at the police station that was video and audio recorded.  Both admissions were voluntary, and both admissions were provided after the Defendant had received his *Miranda* warnings.  In addition, the admissions are not fruit of the poisonous tree because, as argued in Section I, the recovery of the gun was lawful.  As such, the Government respectfully requests that the Court deny the Defendant's Motion to Suppress Evidence (Statements).

### A.   Legal Standard

The Fifth Amendment prohibits compelled self-incrimination.  U.S. CONST. amend. V. Members of law enforcement must inform individuals who are in custody of their Fifth Amendment rights prior to interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Any individual in police custody and subject to custodial interrogation "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Berkemer v.*

*McCarty*, 468 U.S. 420, 429 (1984) (quoting *Miranda*, 384 U.S. at 444).  Officers may issue *Miranda* warnings orally or in writing.  *See, e.g.*, *United States v. Abdi Wali Dire*, 680 F.3d 446, 474 (4th Cir. 2012) (upholding oral warnings).

In addition to complying with *Miranda*, an individual's statements also must be provided voluntarily.  The applicable test for evaluating the voluntariness of a statement or confession is whether, given the totality of the circumstances, the will of the speaker was "overborne and his capacity for self-determination critically impaired."  *United States v. Gray*, 137 F.3d 765, 771 (4th Cir. 1998) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973)); *see also Mincey v. Arizona*, 437 U.S. 385, 399 (1978); *Haynes v. Washington*, 373 U.S. 503, 513 (1963).  In making this determination, "coercive police activity is a necessary predicate" to any finding that a confession was not "voluntary" within the meaning of the Due Process Clause of the Constitution.  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Accordingly, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . .Volunteered statements of any kind are not barred by the Fifth Amendment."  *Rhode Island v. Innis*, 446 U.S. 291, 299-300 (1980); *see also Michigan v. Harvey*, 494 U.S. 344, 353 (1990) ("Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will.").  Thus, unprompted, spontaneous, and otherwise voluntary statements are not prohibited by *Miranda* and are thus admissible.  *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985) ("*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers."); *United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993) ("[S]pontaneous statements [that are] not the product of interrogation [are] not barred by the Fifth Amendment.");

*United States v. Jackson*, 863 F.2d 1168, 1172 (4th Cir. 1989) (holding that officer's statement in response to conversation initiated by the defendant should not be construed as attempt to solicit information).  The Government bears the burden of proving voluntariness or spontaneity by a preponderance of the evidence.  *See, e.g.*, *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997).

**B.    The Defendant's Admissions Are Admissible Because They Were Provided Voluntarily, Post-*Miranda***

After the Defendant was arrested, he was taken back to the station, where Det. Sanders conducted an interview.  During this interview, the Defendant twice admitted to possessing the gun Det. Bezzek recovered from his car.  First, at about 2:14:50, the Defendant said "the only reason why I had that gun on me yo is for protection yo for myself."  *See* Exhibit G.  Second, at about 2:22:55, the Defendant said "I had a gun on me for my own personal protection."  *Id.*  As the video of the Defendant's interview demonstrates, both admissions were voluntary.  Det. Sanders never coerced the Defendant, never promised him anything in return for his admission, and never forced the Defendant to admit that he had the gun.

What's more, both admissions were provided after the Defendant had received and acknowledged his *Miranda* warnings.  The Defendant actually received his *Miranda* warnings twice that day:  First, at the scene of his arrest (which is captured on Det. Bezzek's BWC), and second, at the beginning of his interview (which is captured on the video of the Defendant's interview).  *See id.*; *see also* Exhibit A, at 33:23 – 34:00.  The Defendant's first admission was provided after he had already received his *Miranda* warnings at the scene of his arrest, and the Defendant's second admission was provided after Det. Sanders read him his *Miranda* warnings during the interview and for the second time that day.  *See* Exhibit F.

Finally, the Defendant's admissions are not fruit of the poisonous tree because, as

explained *supra*, Det. Bezzek's search and subsequent recovery of the gun was not unlawful.

## III.   CONCLUSION

WHEREFORE, the Government respectfully requests that the Court deny the Defendant's Motion to Suppress Evidence (Statements) and Motion to Suppress Evidence (Warrantless Search).

Respectfully Submitted,

Robert K. Hur
United States Attorney, District of Maryland

*Lindsay DeFrancesco*
Lindsay DeFrancesco
Special Assistant United States Attorney
Patricia McLane
Assistant United States Attorney
United States Attorney's Officer
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

ECF Filed: January 14, 2021